STATE OF NORTH CAROLINA v. TAD WILLIAM DEXTER, DEFENDANT

No. COA06-1611

(Filed 6 November 2007)

**1. Search and Seizure— child pornography—probable cause for warrant—evidence sufficient**

There was sufficient evidence for probable cause for a search warrant in a child pornography case where the evidence which defendant challenged was not the only evidence offered.

**2. Search and Seizure— search warrant—child pornography— delay from tip to warrant**

The time between the date a tip was received in a child pornography case and the issuance of a search warrant was not excessive. The person delivering the tip indicated that she had made copies of everything on defendant's computer, all of the evidence stated in the affidavit was obtained within twenty-four hours of the tip, and it was apparent that investigators waited for verification by an Internet service provider that a profile belonged to defendant.

**STATE v. DEXTER**

[186 N.C. App. 587 (2007)]

**3. Search and Seizure— probable cause for warrant—child pornography—reliability of informant**

An informant was correctly found to be a reliable source for information leading to a search warrant despite her use of a variation of her name which was not widely known and her subsequent recantation.

**4. Search and Seizure— warrant application—no inconsistency**

There was no inconsistency in statements by an officer in a search warrant application that criminal computer users hide their files and that an informant living in the house would have had a reasonable opportunity to view images on defendant's screen. Furthermore, although defendant rejects the officer's explanation for the informant's recantation, the informant's e-mail clearly stated that she was afraid of defendant.

**5. Sexual Offenses— child pornography—exploitation of minor—elements**

There are two requirements for the offense of third-degree sexual exploitation of a minor: knowledge of the character or content of the material, and possession of material that contains a visual representation of a minor engaging in sexual activity. There is no requirement of "knowing possession" of child pornography.

**6. Obscenity— child pornography—possession—sufficiency of evidence**

The State presented sufficient evidence to prove that defendant was in possession of child pornography, and that defendant was the person in the house who collected child pornography.

Appeal by defendant from judgment entered 13 July 2006 by Judge John E. Nobles, Jr., in Pamlico County Superior Court. Heard in the Court of Appeals 23 August 2007.

*Roy Cooper, Attorney General, by Assistant Attorney General Chris Z. Sinha for the State.*

*Staples S. Hughes, Appellate Defender, by Assistant Appellate Defender Barbara S. Blackman for the defendant.*

ELMORE, Judge.

On 13 July 2006, a jury found Tad William Dexter (defendant) guilty of nine counts of third-degree sexual exploitation of a minor. The trial judge sentenced defendant to several suspended sentences of six to eight months, an active sentence of sixty days, intensive supervision for six months, and thirty-six months of supervised probation. Defendant appeals the trial court's denial of a motion to suppress and a motion to dismiss.

On 3 August 2003, an individual who identified herself as Mary Watson submitted the following text to the FBI from the e-mail address sandall_66@yahoo.com:

> There is a Yahoo group called "hssp" that is actually child porn all the way. It is actually "groups.yahoo.com/group/hsppp." I have reported this group to https://web.cybertip.org/cyberTipIIhtml to see if they can do anything about it. The user is someone I know. It makes me sick and I will continue to do whatever I can to stop this sick sick practice. The user name is "hard_one_in_hand2002." He is a 42 year old male who (according to his Internet files) loves to look at young girls. This guy has to be stopped—he makes me sick. He and I currently share a house and should he find out I reported this, I do not know what he would do. His name is Tad Dexter—he lives [in] Oriental, NC. I am afraid of him. . . . I have copied most of the cd's he has downloaded pictures on. If anyone calls me, please be careful as to how a message is left. He is planning on reformatting his computer soon. I know he joined a paysite called www.lolitateen.com the other day. He is really a sick man. I can only image [sic] what he will do should he find out this information came from me. He runs a business in this community and has made several remarks to me about some of his customers' daughters (15 & 16 year olds). Thanks for your help.

The FBI attempted several times to contact Mary Watson using the telephone number that she had included with her e-mail. The FBI later learned that Mary Watson goes by "Lisa," her middle name,[1] and worked at a restaurant in Pamlico County. The FBI contacted Lisa Watson at the restaurant on 15 August 2002, and Watson told the FBI that she had not filed a complaint against her boyfriend, that she did not know if he possessed child pornography, that she had not heard

---

1. Watson's full name at the time of trial was Mary Elizabeth Sandall Rush. She had re-married and taken her husband's last name, Rush.

of the profile "hard_one_in_hand2002," and was unaware of any Yahoo groups trading in child pornography. However, Watson verified that her e-mail address was sandall_66@yahoo.com and that her boyfriend was Tad Dexter.

Later on 15 August 2002, the FBI learned the following: (1) a Yahoo profile of "hard_one_in_hand2002" did exist and had been modified that day; (2) the website www.lolitateens.com existed and declared itself to have "the youngest barely legal teens!"; (3) defendant resided at the address given by Watson in her e-mail; (4) defendant was forty-two years old on 3 August 2002; (5) defendant had been arrested for a number of sexual crimes in New Jersey, North Carolina, and Virginia, including indecent exposure, obscene literature and exhibitions, assault on a female, and indecent liberties with a child.

The North Carolina State Bureau of Investigation (the SBI) issued a subpoena to Yahoo for subscriber information on the login name, hard_one_in_hand@yahoo.com." On 23 September 2002, Yahoo told the SBI that the login name was issued to "Tad Dexter of Oriental, North Carolina, 28571."

SBI Special Agent Hans J. Miller submitted an affidavit for a search warrant to search defendant's residence for evidence of minors visually depicted while engaged in sexually explicit conduct.[2] In his explanation of probable cause, Special Agent Miller stated that he believed that Mary Watson and Lisa Watson were the same person because investigators were able to verify most of the facts that she gave in her e-mail. Special Agent Miller explained that, based on his training and experience, he knew that "it is common for witnesses in a domestic situation to recant reports or disclosures of criminal activity in order to protect the criminal offender."

Agents from the SBI, the FBI, and officers from the Pamlico County Sheriff's Department and Craven County Sheriff's Office searched defendant's home on 2 October 2002. Defendant shared his home with Watson and two of her children, and each of the four inhabitants had a computer. Special Agent Miller observed that defendant's computer, located in his bedroom, was still running when they entered the home. Several chat windows were open, and one of the chat dialogues showed that "T. W. Dexter" had written, "thanks for the pics" or "thanks for the pictures." There was a picture layered underneath the chat windows, which Special Agent Miller described as "a picture of what appeared to be an under age girl, under 18, in a

---

2. We refer to such materials generally as "child pornography."

spread eagle position lying on a couch with her legs spread open and her arms back. She was wearing skimpy underwear, possibly could be a thong." Special Agent Miller noted that the time displayed on the computer screen was within a few minutes of the actual time according to his watch.

The officers seized three computer towers, a hard disk drive, CDs and CD cases, VHS tapes, a plastic bag containing marijuana, marijuana paraphernalia, floppy disks, a printed web page, a note with handwritten passwords, a lock box with key and contents, a CD entitled "personal movies," and a digital disk drive from inside defendant's computer. The officers recovered a large number of images of suspected child pornography, but did not file charges based on those images because the State was not certain that the individuals in the photographs were under age.

The State ultimately filed charges based on eighteen images recovered from defendant's computer. These images were all temporary Internet files stored in a temporary Internet folder. Special Agent Miller testified that if one receives an image by e-mail through a regular e-mail client (*e.g.*, Outlook), the image files do not normally become temporary Internet files. This may happen if one uses a web-based e-mail client such as Yahoo or AOL, through which one accesses e-mail through a website. If one received a link to a website via e-mail or chat, a temporary Internet file is only created if the user clicks on the link and visits the website.

Some of the image files were found in active temporary Internet folders, which defendant could have accessed at any time. Other image files were found in the "recovered folders" of defendant's hard drive using forensic software. Special Agent Miller explained that "when you take a hard drive and reformat it and it had contained data, forensic software allows you to recover the data that was once there" but is "not easily seen by someone without specialized software." The time stamps on the image files from the recovered folders of defendant's hard drive indicate that the images were viewed in late September of 2002.

I. The Motion to Suppress

[1] Defendant first argues that the trial court erred by denying defendant's motion to suppress the use of any evidence obtained pursuant to the search warrant issued 2 October 2002. He contends that the affidavit prepared by Special Agent Miller and signed by Judge

Charles Henry did not establish probable cause for the search of defendant's home. We disagree.

"[I]n reviewing the trial court's order following a motion to suppress, we are bound by the trial court's findings of fact if such findings are supported by competent evidence in the record; but the conclusions of law are fully reviewable on appeal." *State v. Smith*, 346 N.C. 794, 797, 488 S.E.2d 210, 212 (1997). We employ a totality of the circumstances analysis to review the affidavit and warrant. *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983) (citations omitted).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

*Id.* at 238-39, 76 L. Ed. 2d at 548 (citations, quotations, and alterations omitted). "In adhering to this standard of review, we are cognizant that 'great deference should be paid [to] a magistrate's determination of probable cause and that after-the-fact scrutiny should not take the form of a *de novo* review." *State v. Pickard*, 178 N.C. App. 330, 334-35, 631 S.E.2d 203, 207 (2006) (quoting *State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 258 (1984)).

Defendant contends that there was insufficient evidence to support Judge Henry's finding of probable cause because investigators did not verify the existence of every child pornography Internet group that Watson alleged that defendant belonged to, and did not verify that those groups contained illegal child pornography. Defendant appears to argue that this is a case of first impression for this Court. He argues that other courts are split as to whether membership in a child pornography group is sufficient probable cause for a search warrant. Defendant cites two federal cases that held that mere membership in a child pornography group is insufficient to provide probable cause. However, in those two cases, law enforcement did not list on the affidavits other evidence linking the defendants to possession of child pornography. *See United States v. Strauser*, 247 F. Supp. 2d 1135, 1137 (E.D. Mo. 2003) (stating that the search warrant application included evidence that the defendant was a registered member of

an Internet child pornography group, had a sexually explicit screen name, and the defendant's address); *United States v. Perez*, 247 F. Supp. 2d 459, 462-63 (S.D.N.Y. 2003) ("The nine homes were included in the search warrant application because e-mail addresses for subscribers to the Candyman Egroup were registered to individuals who resided at those locations."). In this case, defendant's membership in the group "www.lolitateens.com" was not the only evidence offered to support a finding of probable cause. Indeed, the Fourth Circuit distinguished *Strauser* and *Perez* from a case in which other evidence supported a finding of probable cause, stating that "cross-weighting of the elements underpinning a probable cause determination is precisely what the 'totality-of-the-circumstances' test invites." *United States v. Ramsburg*, 114 Fed. Appx. 78, 81-82 (4th Cir. 2004) (citation omitted) (unpublished).

Defendant also states, without legal authority, that defendant's "criminal history was too remote in time to establish probable cause." Again, defendant's criminal history was not the sole basis for the finding of probable cause.

**[2]** Defendant contends that too much time passed between the date that the FBI received the tip from Watson and the date that the warrant was issued. He argues that it was not reasonable to assume that the incriminating material would still be on defendant's computer two months after the tip was received because Watson had said that defendant would reformat his hard drive "soon," thereby erasing the evidence. This argument also lacks merit. In her e-mail to the FBI, Watson specifically wrote that she had made copies of everything on defendant's computer, negating the imminent threat of a reformatted hard drive. Furthermore, investigators obtained all of the evidence stated on the affidavit within twenty-four hours of Watson's tip, except for verification by Yahoo that the profile, "hard_one_in_hand2002," belonged to defendant. It is apparent that investigators were waiting for this verification by Yahoo before proceeding with the affidavit.

**[3]** Defendant then postulates .that the State should not have found Watson to be a reliable informant because she gave the tip using a variation of her name by which she is not widely known, and then recanted before the determination of probable cause. This postulation fails for a number of reasons. First, the name that Watson gave was composed of her first name and her last name. Although Watson is more commonly known as Lisa, use of her first name is hardly grounds to find her unreliable. Second, Watson used an e-mail

address that included one of her middle names, and admitted that the e-mail address was hers, even after denying sending the tip. Third, investigators verified most of the information that Watson set forth in her e-mail, thereby bolstering her reliability despite her subsequent recantation.

**[4]** Defendant next asserts that Special Agent Miller relied on speculation to establish probable cause. Defendant points to a supposed internal inconsistency within Special Agent Miller's affidavit: Special Agent Miller first stated that criminal computer users hide their files and then stated that Watson would have had reasonable opportunity to view images on defendant's screen. There is no inconsistency in these statements; defendant may hide his files, but Watson could still have seen what was displayed on the screen while he was accessing those files because she lived in the same home. Defendant also rejects Special Agent Miller's explanation for Watson's recantation because "nothing in the affidavit suggested that any 'domestic situation' existed." Watson's e-mail to the FBI clearly states that she is afraid of defendant.

Looking at the totality of the circumstances, we hold that the affidavit in support of the search warrant for defendant's home established probable cause. The FBI confirmed the easily verifiable information from Watson's tip, which increased Watson's credibility as an informant, even after she denied sending the tip. *See State v. Bone,* 354 N.C. 1, 10-11, 550 S.E.2d 482, 488 (2001) ("[The detective] was able to corroborate almost all of the information in the anonymous tip, including defendant's name, age, race, marital status, criminal status, and area of employment, as well as the street on which the victim lived . . . . These indicia of reliability gave credibility to the anonymous tipster.") (citation omitted). Accordingly, it was reasonable for the investigators and Judge Henry to believe that Watson was being truthful in her other allegations about defendant and the criminal materials in his home. In addition to the evidence offered by Watson and verified by the FBI, defendant had a criminal record that included sexual crimes.

## II. The Motion to Dismiss

**[5]** Defendant next argues that the trial court erred by denying his motion to dismiss because the State failed to establish "knowing possession" of child pornography.

Our review of the trial court's denial of a motion to dismiss is well understood. "[W]here the sufficiency of the evidence . . .

is challenged, we consider the evidence in the light most favorable to the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clarifies the State's case."

*State v. Herring*, 176 N.C. App. 395, 398, 626 S.E.2d 742, 744-45 (2006) (quoting *State v. James*, 81 N.C. App. 91, 93-94, 344 S.E.2d 77, 79-80 (1986)).

When a defendant moves for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion.

*State v. Watkins*, 181 N.C. App. 502, 509, 640 S.E.2d 409, 414 (2007) (citations, quotations, and alterations omitted).

Defendant mischaracterizes the statute under which defendant was prosecuted, N.C. Gen. Stat. § 14-190.17A(a). Defendant states that the section "provides that a person commits third-degree sexual exploitation of a child if he knowingly 'possesses material that contains a visual representation of a minor engaging in sexual activity.' " This is not an accurate statement of the law. There is no requirement of "knowing possession" of child pornography as defendant argues in his brief. There are two requirements for the offense of third degree sexual exploitation of a minor: (1) knowledge of the character or content of the material, and (2) possession of material that contains a visual representation of a minor engaging in sexual activity. N.C. Gen. Stat. § 14-190.17A(a) (2005).

[6] Setting aside defendant's misstatement of the law, we focus on whether the State presented sufficient evidence to prove that defendant was *in possession* of the materials. Defendant does not argue that he was unaware of the character or content of the materials, so we do not address that prong of the statute.

At trial, the prosecutor and defense counsel used the same definition of "possession": a "person possesses when he's aware of its presence and has himself or together with others both the power and intent to control the disposition of that material."[3] That definition

---

3. The quoted text was stated by defense counsel at trial. The prosecutor said, "The judge will tell you that possession is when he is aware of its presence and has both the power and intent to control the disposition of that material." The judge did instruct the jury to that effect, reciting the exact language used by defense counsel.

was not at issue during the trial. The judge instructed the jury to use that definition of "possession" in its deliberations.

Viewing the evidence in the light most favorable to the State, it is clear that the State presented substantial evidence that defendant was in possession of the child pornography: defendant had written in a chat dialogue, "thanks for the pics" or "thanks for the pictures," and several files bore date stamps that matched the date stamp on the chat; Watson testified that defendant showed her how to erase temporary Internet files and how to access temporary Internet files offline; Watson testified that defendant had a habit of frequently erasing his temporary Internet files and reformatting his hard drive; this testimony was corroborated by the image files retrieved from the "recovered folders" of defendant's hard drive, all bearing dates within ten days of the search, suggesting that defendant had purposefully deleted those files or reformatted his hard drive within a few days of the search; and Special Agent Miller testified that the image files could not have become temporary Internet files without defendant first viewing them. The evidence shows that defendant knew exactly what temporary Internet files were, purposefully stored child pornography as temporary Internet files, revisited those files offline, and purposefully and habitually deleted those temporary Internet files so that he would avoid being caught with too many at once. Defendant clearly had the power and intent to control the disposition of the images.

Defendant also posits that the State did not establish that defendant was the individual who caused the images to be deposited on the hard drive and that Lisa Watson was the person in the household who collected child pornography. We are not dissuaded from our position that the State adequately proved that defendant had possession of the images. The images were found on defendant's computer. Defendant chose the user name "hard_one_in_hand." Defendant gave Special Agent Miller a receipt showing that he had joined the pay site "www.teententeen.com." Defendant admitted that he visited child pornography news groups. Defendant was at home alone when the officers executed their search warrant,[4] and a review of his temporary Internet files showed that he had acquired ten of the images within one hour of the officers' arrival and even thanked the sender.

---

4. Lisa Watson had left for work several hours earlier.

Accordingly, we hold that the trial court did not err by denying defendant's motion to suppress and defendant's motion to dismiss. Defendant received a trial free from error.

No error.

Judges STEELMAN and STROUD concur.